UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JUDI JACKSON, | NO. CIV. S-05-79 FCD KJM |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| PLACER COUNTY, a political subdivision of the State of California, PLACER COUNTY ANIMAL CONTROL, et al., | |
| Defendants. | |

----oo0oo----

This matter is before the court on defendants County of Placer, Placer County Animal Control,[1] Richard Ward, Richard Stout, and Evelyn Garrett's motion to dismiss plaintiff Judi Jackson's complaint, pursuant to Federal Rule of Civil Procedure

---

[1] Defendants assert that "Placer County Animal Control" has been "erroneously sued" (Reply, filed May 18, 2005); however, they have not stated the basis for their assertion or specifically moved for the agency's dismissal. Accordingly, the court makes no finding herein regarding the propriety of plaintiff's action against the agency.

1

12(b)(6).[2] In said complaint, plaintiff alleges federal claims under 42 U.S.C. § 1983 for violation of her substantive and procedural due process rights and for unlawful search and seizure, and state law claims for negligence, negligent training and supervision, intentional infliction of emotional distress, negligent infliction of emotional distress, and conversion. (Compl., filed Jan. 13, 2005.)[3]

For the reasons set forth below, defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

As alleged in the complaint, plaintiff is the owner and operator of an equestrian facility located in Roseville, California. In three trips, on or about November 19, 1999, December 3, 1999 and July 7, 2000, plaintiff rescued and transferred 28 horses from Louisiana to Roseville. At the time of the transfer of these horses, all but four had been seriously

---

[2] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L. R. 78-230(h).

[3] With the exception of the conversion claim (which defendants do not move to dismiss), it is these claims which the court addresses below. While defendants moved to dismiss other *purported* claims of plaintiff (including federal claims under Section 1983 for violation of plaintiff's privacy rights, the First Amendment, and the Fifth Amendment, and for defamation and malicious prosecution, and state law claims for false arrest, false imprisonment, malicious prosecution, and misrepresentation), plaintiff clearly stated in opposition that she is not alleging any such claims against defendants. The court also does not consider any claim for "wrongful disclosure of arrest or search information." While plaintiff appears to suggest in her opposition that she has alleged such a claim and that it is not barred by the governmental immunity provided in California Civil Code § 47(c), a plain reading of her complaint does not reveal this claim. Indeed, there are no specific allegations pertaining to such a claim, nor can the court ascertain from the complaint, a legal basis for asserting one.

2

1  mistreated and malnourished.  Plaintiff transferred the horses
2  for the specific purpose of rehabilitating them and training them
3  for use in her equine training facility.  (Compl., ¶ 20.)
4       Upon arrival of the horses, first at a temporary location in
5  Lincoln, California, then in Roseville, plaintiff began the
6  process of rehabilitating the horses.  While in Lincoln, in June
7  2000, plaintiff was contacted by defendant Stout, an employee of
8  defendant Placer County Animal Control, as a result of a report
9  by a neighbor.  No charges were made or filed against plaintiff
10 after the visit, and the file was closed as an "invalid
11 Complaint."  (Id. at ¶ 21.)
12      Thereafter, on June 7, 2000, Stout again contacted
13 plaintiff, who was now at the Roseville facility with the horses.
14 At that time, Stout found the horses to be "cared for."  (Id. at
15 ¶ 22.)
16      Between August 23, 2000 and September 12 [sic], 2000, Stout
17 contacted plaintiff three times regarding the horses.  He did not
18 conduct a thorough inspection of the horses on any of the
19 occasions.  (Id. at ¶ 23.)  On August 23, 2000, Stout ordered an
20 increase of feed for six horses, followed up for the next four
21 days.  He made this order orally.  At the time, plaintiff felt
22 threatened and compelled to follow Stout's directives.  (Id. at ¶
23 24.)
24      Later on September 12, 2000, Stout returned to plaintiff's
25 property with a veterinarian, Dr. Bartow.  A brief visual
26 inspection was performed of plaintiff's horses.  (Id. at ¶ 25.)
27 Then on September 18, 2000, Stout returned again and gave
28 plaintiff a written feeding plan which he explained was ordered

3

1 by the Placer County Superior Court.  Again there was no tests of
2 the animals or investigation of the circumstances.  (Id. at ¶
3 26.)
4     On September 29, 2000, Stout contacted plaintiff and
5 relieved plaintiff of the written feeding plan after observing
6 that plaintiff's horses had lost weight.
7     On or about October 4, 2000, defendant Gentile, also an
8 employee of Placer County Animal Control, contacted plaintiff at
9 her property and ordered plaintiff to return her horses to the
10 feed plan which had been discontinued by Stout.  Gentile did not
11 conduct any tests on the horses and did not make a thorough
12 inspection of them.  On October 9, 2000, defendant Carter,
13 another employee of Placer County Animal Control, contacted
14 plaintiff at her property to verify she was following the feeding
15 plan ordered by Gentile.  No thorough examination or tests were
16 conducted on the horses.  On October 10, 2000 defendant Garrett,
17 also an employee of Placer County Animal Control, contacted
18 plaintiff at her property to inform plaintiff that she was taking
19 the case over and ordered plaintiff to begin anew on the feeding
20 plan.  Nevertheless, as a result of the County's feeding plan,
21 the horses continued to lose weight and showed visible signs of
22 losing weight.  (Id. at ¶s 28-31.)
23     As a result of the physical appearance of plaintiff's
24 horses, on November 6, 2000 plaintiff was arrested on one charge
25 of felony cruelty to animals, and the 28 horses were seized and
26 confiscated by defendants with no pre-seizure hearing.  (Id. at
27 ¶s 32-33.)
28

4

1  On May 25, 2001, the Placer County District Attorney amended
2  the original complaint adding one felony count of perjury and one
3  felony count of submitting false evidence at the post-seizure
4  hearing.  Plaintiff's trial on the three felony counts began on
5  October 21, 2001 in Placer County Superior Court.  Plaintiff
6  alleges that in order to support the charges brought against her,
7  defendants altered, destroyed and tampered with evidence
8  presented at the trial.  After lengthy testimony, plaintiff was
9  found guilty on all three counts.  (Id. at ¶s 36-37.)
10  In February 2002, plaintiff filed a motion for a new trial,
11  asserting ineffective assistance of counsel on the basis of her
12  counsel's failure to provide a defense of entrapment.  (Id. at ¶
13  38.)  Plaintiff's motion was granted as to all counts on May 11,
14  2002.  (Id. at ¶ 39.)
15  The County appealed, and on January 19, 2004, the Third
16  District Court of Appeal affirmed the grant of a new trial.  (Id.
17  at Ex. A.)  The court of appeal found that, on the evidence
18  presented, entrapment was a viable defense which should have been
19  presented to the jury.  (Id.)
20  The Placer County District Attorney then offered plaintiff a
21  plea bargain in which she pled "no contest" to two misdemeanors
22  of "concealing or destroying evidence."  The animal cruelty and
23  perjury charges were dismissed.  As part of the plea bargain, the
24  horses were to be returned to plaintiff.  (Id. at ¶ 43.)
25  Prior to the criminal trial, in December 2000, Placer County
26  Court Commissioner Ross ruled that the horses seized by
27  defendants were the personal property of and owned by plaintiff.
28  At the time of the seizure, one mare was in foal and subsequently

5

1  delivered, bringing the total number of horses to 29.
2  Commissioner Ross ruled that if plaintiff was convicted of felony
3  animal cruelty, the horses would not be returned to her, but if
4  she was acquitted or not convicted of a felony then the horses
5  would be returned to her.  (Id. at ¶ 45.)[4]

6      In May 2004, plaintiff discovered that ownership of three of
7  her horses had been transferred by defendants to other persons.
8  (Id. at ¶ 49.)  The transfer of ownership was done without notice
9  to plaintiff and without any court proceeding or order.  (Id. at
10 ¶ 50.)  By the transfer, defendants specifically intended to
11 deprive plaintiff of her personal property.  (Id. at ¶ 51.)

12     In June 2004, plaintiff was informed that four of the horses
13 seized by defendants had died since being confiscated and while
14 in the custody of defendants.  (Id. at ¶ 48.)

**STANDARD**

16     On a motion to dismiss, the allegations of the complaint
17 must be accepted as true.  Cruz v. Beto, 405 U.S. 319, 322
18 (1972).  The court is bound to give plaintiff the benefit of
19 every reasonable inference to be drawn from the "well-pleaded"
20 allegations of the complaint.  Retail Clerks Int'l Ass'n v.
21 Schermerhorn, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff
22 need not necessarily plead a particular fact if that fact is a
23 reasonable inference from facts properly alleged.  See id.

24     Given that the complaint is construed favorably to the
25 pleader, the court may not dismiss the complaint for failure to

---

[4] On May 5, 2005, Commissioner Ross ruled that the horses were to be returned to plaintiff, however, defendants have not yet returned them.  (Opp'n, filed May 13, 2005 at 6.)

6

state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45 (1957); NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).

Nevertheless, it is inappropriate to assume that plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

## ANALYSIS

### 1. **Heck v. Humphrey**

Relying on Heck v. Humphrey, 512 U.S. 477 (1994), defendants maintain that plaintiff's Section 1983 claims are barred by virtue of her state criminal prosecution. In Heck, the Court held that

> in order to recover damages [under Section 1983] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by action whose unlawfulness would render a conviction or sentence invalid, [the plaintiff] must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus, . . .

Id. at 486-87. Here, defendants emphasize plaintiff's original conviction on three felony counts, animal cruelty, perjury, and falsification of evidence. They assert, without support, that

7

the later grant of a new trial did not "complete[ly] exonerat[e]" plaintiff, and thus her claims are barred by Heck.  Defendants are incorrect.  By California statute, Penal Code § 1180, the granting of a new trial "puts the parties back in the same position as if no trial had been had."  In other words, while plaintiff could have been charged and tried again on the same charges, until a new conviction was achieved, she was *presumed innocent,* and the complaint in this case does not therefore run afoul of Heck.

Additionally, her ultimate, *nolo contendere* plea to two misdemeanors charges does not change the analysis.  First, the plea was to two charges of concealing and destroying evidence at the *post*-seizure hearing, charges which are unrelated to the claims here relating to the unlawful seizure of plaintiff's horses without notice or *pre*-seizure hearing.  Moreover, California courts have specifically held that a conviction based on a *nolo contendere* plea may not be used against the defendant for a collateral purpose, except in limited circumstances not present in this case.  Arneson v. Fox, 28 Cal. 3d 440 (1980); see also Birnbaum v. Lackner, 82 Cal. App. 3d 284, 287 (1978) (when the conviction is based on a *nolo contendere* plea, its reliability as an indicator of actual guilt is substantially reduced).  Therefore, plaintiff's *nolo contendere* plea does not bar her instant Section 1983 claims.

**2.   Due Process Claims**

Plaintiff alleges two due process claims, one for violation of her substantive due process rights and one for violation of her procedural due process rights.  (Compl., ¶s 55-75.)

8

Defendants move to dismiss both claims.  First, with regard to her claim of a violation of her substantive due process rights, defendants argue that even assuming the truth of her allegations, plaintiff has not stated facts which rise to the necessary level of "shocking the conscience of a civilized society."  See County of Sacramento v. Lewis, 523 U.S. 833 (1998).  Only fundamental rights and liberties "'deeply rooted in this Nation's history and tradition'" and "'implicit in the concept of ordered liberty'" qualify for protection under the substantive due process provisions of the Fourteenth Amendment.  Washington v. Glucksberg, 521 U.S. 702, 721 (1997).  To state such a claim, the plaintiff must make a careful description of the asserted fundamental liberty interest involved; vague generalities will not suffice.  Id.

Here, plaintiff bases her claim on the following key facts:[5] defendants seized her horses without notice or a pre-seizure hearing required by law; defendants did so with the specific intent of depriving her of her personal property and livelihood; defendants have held the horses without justification for more than four years; while in their custody, defendants have cared for the horses in such a way as to cause the death of four of her horses and to cause the hospitalization of three of her horses; and without notice to plaintiff or court order, defendants transferred ownership of three of her horses to other persons.

---

[5] As is apparent from her opposition, plaintiff does not base this claim on allegations of deliberate fabrication of evidence by the government or judicial deception under Devereau v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) or Butler v. Elle, 281 F.3d 1014, 1024 (9th Cir. 2002).  Therefore, the court does not consider defendants' arguments in this regard.

9

Assuming the truth of these allegations, as the court must, plaintiff has adequately alleged a substantive due process claim. She has alleged the fundamental interest at stake, her *personal property rights*, and has described with sufficient particularity how that right was affected and by what specific conduct of defendants. Accordingly, defendants' motion in this regard is denied.

Second, with respect to plaintiff's claim of a violation of her procedural due process rights, her claim is based solely on the failure of defendants to provide a *pre*-seizure hearing before confiscating her horses.[6] Plaintiff alleges she was entitled to said hearing by law because the circumstances did not support a "summary seizure" of her animals. Cal. Penal Code § 597.1(g).[7]

---

[6] Despite some references in her complaint, plaintiff admits her claim is not based on the criminal charges and/or criminal trial. (Opp'n at 16.)

[7] The court notes that plaintiff cites California Penal Code § 597.1(f) in her complaint (Compl., ¶ 58) as the basis for her "right" to a pre-seizure hearing; however, that sub-section does not provide for such a hearing, rather it discusses the circumstances wherein only a *post*-seizure hearing is required. It provides:
> Whenever an officer authorized under this section seizes or impounds an animal based on a reasonable belief that prompt action is required to protect the health and safety of the animal or the health and safety of others, the officer shall, prior to the commencement of any criminal proceedings authorized by this section, provide the owner or keeper of the animal, if known or ascertainable after reasonable investigation, with the opportunity for a postseizure hearing to determine the validity of the seizure or impoundment, or both.

Id. Instead, it is sub-section (g) which supports plaintiff's allegations in this case: "Where the need for immediate seizure is not present and prior to the commencement of any criminal proceedings . . ., the agency shall provide the owner or keeper of the animal, if known or ascertainable after reasonable investigation, with the opportunity for a hearing prior to any seizure or impoundment of the animal." Cal. Penal Code §

10

According to plaintiff there was no immediate need to seize the horses. On this motion, the court must assume the truth of these allegations, which under Mathews v. Eldridge, 424 U.S. 319 (1976), are sufficient to state a procedural due process claim.

Where a person's property is taken by the government, the due process clause of the Fourteenth Amendment requires some form of notice and a hearing. Id. Absent extraordinary circumstances justifying resort to summary procedures, the hearing must take place before the property is taken. Fuentes v. Shevin, 407 U.S. 67, 81-82 (1972) ("If the right to notice and a hearing is to serve its full purpose, then, it is clear it must be granted at a time when the deprivation can still be prevented.") Plaintiff's claim herein is supported by the California court of appeal's decision in Carrera v. Bertaini, 63 Cal. App. 3d 721 (1976) where the court held that absent circumstances justifying summary seizure of a plaintiff's farm animals on grounds of animal cruelty and neglect, the plaintiff was entitled to notice and a pre-seizure hearing. Here, plaintiff alleges that no such justifying circumstances were present.

Defendants' arguments to the contrary must be rejected at this stage. Defendants attempt, through this motion, to argue the substantive facts and merits of this claim. According to them, the circumstances warranted the County's immediate removal of the horses from plaintiff's custody, and that the post-seizure hearing provided plaintiff was sufficient due process as contemplated by California Penal Code § 597.1(f). This factual

---

597.1(g). The court therefore construes plaintiff's complaint as arising under this sub-section.

and legal determination cannot be made on the instant motion. Therefore, defendants' motion must be denied.

### 3. Fourth Amendment Claim

Contrary to defendants' argument, plaintiff's Fourth Amendment claim is not based on her arrest[8] but rather the seizure of her personal property, the horses, without a pre-seizure hearing, which she alleges is mandated by law in these circumstances. Thus, for the same reasons as set forth above regarding plaintiff's procedural due process claim, plaintiff has adequately alleged a Fourth Amendment claim for the unlawful seizure of her horses. See e.g. Carrera v. Bertaini, 63 Cal. App. 3d 721, 727 (1976) (finding unlawful the impoundment of an owner's farm animals without notice or hearing where circumstances did not support "summary seizure"). Plaintiff alleges defendants acted unreasonably, in violation of the Fourth Amendment, when they seized her horses without notice and hearing to which she was legally entitled. Said seizure caused plaintiff damages, including emotional distress and loss of wages. (Compl., ¶s 76-81.) These allegations sufficiently state a Fourth Amendment claim.

### 4. Monell Claim

Under Section 1983, a public entity cannot be subjected to vicarious liability or be sued on a theory of respondeat superior for the acts of its employees. Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). Instead, a plaintiff is required to prove

---

[8] While plaintiff's complaint makes vague reference to the "seizure of plaintiff" and the unreasonableness of her "incarceration," her opposition clarifies that the sole basis for her Fourth Amendment claim is the seizure of her horses.

12

that the deprivation of a federal right occurred pursuant to an identified governmental policy or custom of the entity consciously chosen by the entity. Id. at 690-91. Here, defendants allege that plaintiff has failed to allege any specific formal governmental policy, or "longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." Gillete v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992). Rather, plaintiff relies exclusively on the single incident relating to the confiscation of her horses on November 6, 2000.

Plaintiff concedes that her "Monell" allegations against the defendant County are deficient. She requests leave to amend to correct them. In support of her request, she describes additional facts not alleged in the complaint, including other encounters she had with the County pertaining to her dogs and cats, as well as the County's encounters with her then fiance who were boarded horses at the Roseville property. (Opp'n at 20-21.) Plaintiff maintains that these other encounters establish a practice or custom of the County that is "persistent and widespread" within the meaning of Monell such that they establish a "permanent and well-settled [entity] policy" of depriving persons of their personal property unjustifiably, without notice or pre-seizure hearing. Monell, 436 U.S. at 691.

Under Federal Rule of Civil Procedure 15, leave to amend should be "freely given." Plaintiff has demonstrated that if permitted, she can amend her complaint to state facts sufficient to support a Monell claim against the County. Accordingly, the court grants defendants' motion as to this claim; however,

13

plaintiff is granted leave to amend to correct the deficiency.

### 5. Negligence Claims

Defendants are correct that public entities may be held liable only if a statute declares them to be liable. <u>Van Ort v. Estate of Stanewich</u>, 92 F.3d 831 (9th Cir. 1996). Thus, the California Tort Claims Act provides that a public entity is not liable for injury arising from an act or omission except as provided by statute. Cal. Gov't Code § 815(a). Pursuant to Section 815.6 of the Government Code, "a public entity is liable for an injury proximately caused by its failure to discharge a mandatory duty designed to protect against the risk of a particular kind of injury . . ."

Here, however, plaintiff has not identified a precise duty owed by the County to her. Instead, she simply relies on the case of <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696 (9th Cir. 1990), alleging that pursuant to that case a "special relationship" was formed between her and the County, based upon the contacts regarding the feeding plan for the horses and the criminal prosecution, sufficient to support a negligence claim. <u>Balistreri</u> does not provide support for plaintiff's claim. In <u>Balistreri</u>, the Ninth Circuit considered whether a plaintiff could maintain a due process claim under Section 1983 against the police department based on the plaintiff's allegation that the police department knew of her plight as a domestic violence victim, yet did nothing to prevent the attack by her husband. While the court recognized that in some circumstances a "special relationship" may be formed between a plaintiff and the government sufficient to support such a claim, the facts of that

14

case did not support such a claim. Id. at 700. Balistreri did not involve a negligence claim, and therefore lends no support to plaintiff's complaint. Defendants' motion is granted as to this claim.

Plaintiff also bases her negligent hiring/supervision claim on Balistreri; for the same reasons, her claim fails and defendants' motion is granted.

Plaintiff, however, is granted leave to amend these allegations. See City of Canton v. Harris, 489 U.S. 378 (1989).

### 6. Intentional and Negligent Infliction of Emotional Distress Claims

Defendants move to dismiss plaintiff's intentional infliction of emotional distress claim on the ground that plaintiff has not alleged a requisite element of the claim--that defendants' conduct was "so extreme as to exceed all bounds of that usually tolerated in a civilized society." Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982). Plaintiff alleges defendants confiscated her personal property, the horses, without a pre-seizure hearing, specifically provided by law, and without any showing of exigent circumstances. In so doing, plaintiff alleges defendants caused the death of at least four of plaintiff's horses, and ultimately, transferred to third parties, without court order or notice to plaintiff, ownership of at least three of plaintiff's horses. This alleged conduct of defendants adequately supports this element of the claim. Fowler v. Varian Associates, Inc., 196 Cal. App. 3d 34 (1987) (the alleged conduct of defendants *could* reasonably be regarded as so extreme and outrageous so as to permit recovery).

15

Contrary to defendants' argument, these same allegations also support plaintiff's negligent infliction of emotional distress claim, which requires an allegation that plaintiff suffered "severe" emotional distress. Kelly v. General Telephone Co., 136 Cal. App. 3d 278, 286 (1982). Albeit unusual circumstances, the death of the four horses and the involuntary forfeiture of three other horses sufficiently supports her general allegation of "severe" emotional distress. (Compl., ¶ 97.)

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff is granted leave to amend her Monell and negligence claims. Said amended complaint shall be served and filed within 20 days of the date of this order. Defendants' response thereto shall be filed and served within 30 days after service of the amended complaint.

IT IS SO ORDERED.

DATED: May 27, 2005

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE