1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11

                            ----oo0oo----

12

13   JUDI JACKSON,

                                    NO. CIV. S-05-79 FCD KJM

14          Plaintiff,

15       v.                         <u>MEMORANDUM AND ORDER</u>

16   PLACER COUNTY, a political
     subdivision of the State of
17   California, et al.,

18          Defendants.

19                          ----oo0oo----

20       This matter is before the court on a motion for summary

21   judgment, or alternatively, partial summary judgment brought by

22   defendants Placer County, Placer County Animal Control, Richard

23   Ward, Richard Stout, Evelyn Garrett and Brad Banner (collectively

24   "defendants") and a cross-motion for partial summary judgment

25   brought by plaintiff Judi Jackson ("plaintiff").[1]  By their

26   motion, defendants seek adjudication in their favor on

27

28   _____

         [1]    Because oral argument will not be of material
     assistance, the court orders these matters submitted on the
     briefs.  E.D. Cal. L.R. 78-230(h).

plaintiff's complaint, alleging claims for (1) violation of
plaintiff's Fourteenth Amendment procedural due process rights
pursuant to 42 U.S.C. § 1983 ("Section 1983") based on the
seizure of her horses; (2) violation of plaintiff's Fourteenth
Amendment substantive due process rights pursuant to Section 1983
based on the seizure of her horses; (3) violation of plaintiff's
Fourth Amendment rights to be free from unlawful search and
seizure pursuant to Section 1983; (4) failure to train or
supervise pursuant to Section 1983; (5) intentional infliction of
emotional distress; (6) negligent infliction of emotional
distress; (7) conversion; (8) defamation; (9) injunctive relief;[2]
(10) fraud/misrepresentation; (11) violation of plaintiff's
Fourteenth Amendment procedural due process rights pursuant to
Section 1983 based on the transfer of ownership of two of her
horses; and (12) violation of plaintiff's Fourteenth Amendment
substantive due process rights pursuant to Section 1983 based on
the transfer of ownership of two of her horses.

Plaintiff opposes defendants' motion and filed a cross-
motion for partial summary judgment on her Section 1983 claims
for violation of her Fourteenth Amendment procedural and
substantive due process rights based on the transfer of ownership
of two of her horses and violation of her Fourth Amendment rights
based on the seizure of her property; her conversion claim; her
defamation claim; and her fraud/misrepresentation claim.

---

[2]    The court does not address injunctive relief in the
instant order as such relief is only properly considered as a
remedy following trial not as a substantive cause of action for
determination on these motions for summary judgment.

2

1    For the reasons set forth below, the court GRANTS in part
2  and DENIES in part defendants' motion and DENIES plaintiff's
3  cross-motion.

4                          **BACKGROUND**[3]

5    **I.   Plaintiff's Move to California**

6    Plaintiff operated a horse business in Louisiana prior to
7  November 1999.  (Pl.'s Response to Defs.' Stmt. of Undisputed
8  Facts ["PUF"], filed March 9, 2007 [Docket #104], ¶ 2).  As part
9  of the business, plaintiff obtained horses through rescue, sale
10 or breeding and maintained them, up to 60 at a time, on rented
11 property.  (PUF ¶ 2).  In November 1999, plaintiff moved from
12 Louisiana to California with four horses.  (PUF ¶ 3).  Plaintiff
13 left 21 horses in Louisiana under the care of a fifteen year old
14 student and his father as a trade for services previously
15 provided to them by plaintiff.  (PUF ¶ 3).

16   In December 1999, after receiving a phone call from a local
17 deputy, plaintiff returned to Louisiana to find all of her 21
18 horses in poor condition.  (PUF ¶ 4).  Plaintiff moved 19 of the
19 horses to California in trailers.  (PUF ¶ 6).  The remaining two
20 horses were left in Louisiana under the care of the student and
21 his father.  (PUF ¶ 7).  Plaintiff was later informed of the
22 declining condition of the two horses in Louisiana and she
23 returned to move those horses to California as well.  (PUF ¶¶ 8-
24 9).

25 _____

26     [3]    Where the facts are undisputed, the court cites to the
   parties' respective responses to the pertinent statement of
   undisputed facts.   Where the facts are disputed, the court
27 recounts the opposing party's version of the facts as it must do
   on a motion for summary judgment, citing the party's respective
28 evidence giving rise to the triable issue of fact.

                                   3

Plaintiff moved her horses to a rented property on Cook-Riolo Road in Roseville, California, which was zoned to allow only seven horses.  (PUF ¶ 11).  Plaintiff moved her horses to California to rehabilitate them and to train them for use in her equine training facility.  (Pl.'s MSJ, filed Feb. 23, 2007 [Docket #94-12], at 2).

## II.   **Plaintiff's Interaction with Placer County Animal Control**

Defendant Richard Stout ("Stout"), an employee of Placer County Animal Control, visited plaintiff on August 23, 24, and 25, 2000.  (PUF ¶ 12).  Stout expressed concerns about the underweight condition of 28 horses under plaintiff's care during his visits to plaintiff's property.  (PUF ¶ 12).  Stout returned to plaintiff's property on September 7, 2000 after receiving a written complaint from one of plaintiff's neighbors about horses on plaintiff's property dying of starvation.  (PUF ¶ 13).  On September 8, 2000, Stout issued a pre-seizure notice to plaintiff.  (PUF ¶ 14).  Stout believed the notice was a notice of correction which advised plaintiff to have a veterinarian inspect the horses.  (Defs.' Reply to Pl.'s Stmt. of Undisputed Facts in Supp. of MSJ ["DUF"], filed Mar. 9, 2007 [Docket #99-2], ¶ 24).  Defendants contend the pre-seizure notice advised plaintiff of a right to request a pre-seizure hearing.  (PUF ¶ 14).  Plaintiff maintains that she did not see the option to request a hearing on the pre-seizure notice.  (PUF ¶ 14).  The pre-seizure notice form asked the animal owner to either request a hearing or waive the right to a hearing by checking a box. (Decl. of Franklin G. Gumpert ["Gumpert Decl."], filed Feb. 23,

4

2007 [Docket #87], Ex. N-2).  Plaintiff did not check either box.
(Id.; PUF ¶ 39).

Veterinarian Kris Bartow ("Bartow") examined plaintiff's horses and sent a feed plan to Stout.  (DUF ¶ 2).  Stout mailed a copy of the feed plan to plaintiff.  (DUF ¶ 3).  Plaintiff did not agree with Bartow's feed plan but she did not ask him to modify it nor did she confer with another veterinarian regarding the feed plan.  (PUF ¶¶ 19-21).  Plaintiff stopped following Bartow's feed plan on September 29, 2000.  (PUF ¶ 23).

On October 4, 2000, Ken Gentile ("Gentile"), Placer County Animal Control employee, inspected plaintiff's property and discovered feed which violated Bartow's feeding plan.[4]  (PUF ¶ 24).  Gentile ordered plaintiff to remove the offending feed from her property and to adhere to Bartow's feed plan.  (PUF ¶ 24). Plaintiff asked Robert Carter ("Carter"), Placer County Animal Control employee,[5] on October 9, 2000, to relieve her of Bartow's feed plan.  (PUF ¶ 25).  Carter declined to do so and reaffirmed that Animal Control would continue to monitor the health of plaintiff's horses.  (PUF ¶ 25).

Defendant Evelyn Garrett ("Garrett"), an Animal Control Officer, met with plaintiff on October 10, 2000.  (PUF ¶ 27). Garrett told plaintiff she wanted to discuss Bartow's feed plan

---

[4]   Ken Gentile was previously named as a defendant but was voluntarily dismissed from this action by plaintiff on February 16, 2005. (Notice of Dismissal of Defendants Carter and Gentile, filed Feb. 16, 2005).

[5]   Robert Carter was previously named as a defendant but was voluntarily dismissed from this action by plaintiff on February 16, 2005. (Notice of Dismissal of Defendants Carter and Gentile, filed Feb. 16, 2005).

but plaintiff said she would not speak with Garrett unless Garrett would relieve her from Bartow's feed plan.  (PUF ¶ 27). Garrett had reviewed Bartow's feed plan and believed plaintiff could be confused about whether or not her horses should be "free-fed."  (DUF ¶ 13-14).

### III. <u>The Seizure of Plaintiff's Property</u>

On November 1, 2000, Garrett applied for a search warrant to seize plaintiff's horses and to obtain records related to the horses including their feeding and veterinarian care.  (PUF ¶ 32).  Plaintiff contends that the application omitted relevant information including Garrett's concerns about plaintiff's knowledge and understanding of the feed plan.  (DUF ¶ 20). Defendants maintain that Garrett no longer had concerns about plaintiff's understanding of the feed plan because Bartow assured her that plaintiff understood that her horses should be free-fed. (DUF ¶ 20).  Garrett's "Affidavit in Support of Search Warrant" was reviewed by the Deputy District Attorney and then authorized by the Placer County Superior Court.  (PUF ¶¶ 33-34).  The warrant was served several days later, on November 6, 2000, because it took several days to arrange the logistics of the seizure including transportation for the horses.  (PUF ¶ 35). Twenty-eight horses, cats, a German Shepard, chickens, and a filing cabinet were seized from plaintiff.  (PUF ¶¶ 40-42). Plaintiff was arrested and served a Notice of Post-Seizure Hearing.  (PUF ¶ 44).

Defendants seized every horse on plaintiff's property regardless of physical condition.  (DUF ¶ 119).  Two horses seized were not dangerously thin at the time of the seizure.

6

(DUF ¶ 120).  Garrett executed a "Return on Search Warrant" on November 6, 2000, which included a list of the horses and property seized.  (PUF ¶ 43).

### IV.  Post-seizure Hearing and Related Court Proceedings

Plaintiff requested and received a post-seizure hearing. (PUF ¶ 45).  Plaintiff was represented by an attorney, Dirk Amara, at a hearing before Placer County Superior Court Commissioner John Ross.  (PUF ¶ 45).  Starting on November 13, 2000, testimony was taken and arguments were presented over the course of several days.  (PUF ¶ 45).  Before the commissioner's ruling, on December 5, 2000, a Felony Complaint was filed against plaintiff for animal cruelty.  (PUF ¶ 46).  On December 15, 2000, Commissioner Ross issued an order which found the seizure of plaintiff's horses was proper, the seized horses were underweight, and the horses would be forfeited by plaintiff if she were found guilty of animal cruelty.  (PUF ¶ 47). Furthermore, the commissioner ordered a hearing to determine if the horses should be returned to plaintiff.  (PUF ¶ 47).  The commissioner indicated that if the horses were returned to plaintiff, she would bear the costs of their care while in county custody.  (PUF ¶ 47).

Plaintiff, along with a second attorney, Hill Snellings, challenged the December 15, 2000 order.  (PUF ¶ 48).  Plaintiff filed a Petition for Writ of Prohibition and Mandate in the California Court of Appeal, Third Appellate District. (PUF ¶ 48). The court denied relief to plaintiff because she did not first seek relief in the superior court.  (PUF ¶ 48).

Plaintiff next filed a Petition for Writ of Administrative Mandate in the Placer County Superior Court.  (PUF ¶ 49). Superior Court Judge Gaddis heard testimony on the issue and denied the Petition for Mandate, thereby upholding Commissioner Ross' order.  (PUF ¶ 49).  Subsequently, plaintiff appealed the superior court's decision to the third district court of appeal. (PUF ¶ 50).  After receiving full briefing on the merits of the case, the court affirmed the superior court's decision.  (PUF ¶ 50).  The court found substantial evidence to support immediate seizure of the horses.  (PUF ¶ 50).  Plaintiff did not seek review in the California Supreme Court.  (PUF ¶ 51).

Defendants contend that on January 26, 2001, Placer County Superior Court Judge Roeder issued an order precluding plaintiff from owning or controlling any horses.  (PUF ¶ 52).  Plaintiff maintains Judge Roeder's order applied only to new ownership of horses.  (PUF ¶ 52).  Later, on July 20, 2001, Judge Roeder, after a contested hearing, issued an order precluding plaintiff from having any horses on her premises and prohibiting her from owning, controlling, or possessing any horse.[6]  (PUF ¶ 53).

---

[6]   Plaintiff objects to this statement asserting "the evidence as cited is not part of a request for judicial notice as stated by defendants." (PUF ¶ 53).  Federal Rule of Evidence 201 permits a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute," in that the fact is either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b).  The court can take judicial notice of matters of public record, such as pleadings in another action and records and reports of administrative bodies.  See Emrich v. Touche Ross & Co., 846 F.2d 1190, 1198 (9th Cir. 1988). A court may take judicial notice of a fact which is the proper subject of judicial notice whether a party has requested it or

(continued...)

### V.   Plaintiff's Criminal Trial

The Placer County Superior Court heard the criminal trial against plaintiff on charges of animal cruelty, perjury, and presenting false evidence in an administrative hearing.[7] (PUF ¶ 54).  Plaintiff was represented by counsel during the jury trial. (PUF ¶ 54).  On November 21, 2001, the jury returned a verdict of guilty on all three felony charges brought against plaintiff. (PUF ¶ 54).

Plaintiff filed a motion for a new trial in February 2002, asserting ineffective assistance of counsel on the grounds her counsel failed to provide or request a jury instruction regarding the defense of entrapment for the felony charges of perjury and presenting false evidence.  (Sec. Am. Compl. [hereinafter, "Compl."], filed June 30, 2006, ¶ 39).  In her motion, plaintiff also asserted that the trial judge erroneously failed to grant a motion to dismiss on the ground that the prosecution did not meet its burden of proof on any of the charges.  (Compl. ¶ 39).  Judge Cosgrove of the Placer County Superior Court granted plaintiff's motion on May 11, 2002.  (Compl. ¶ 40).

On July 25, 2002, Placer County filed an appeal of Judge Cosgrove's order in the third district court of appeal.  (Compl. ¶ 41).  The court affirmed the trial court's grant of a new trial and found that entrapment was a viable affirmative defense.

---

[6](...continued)
not.  Fed. R. Evid. 201(c).  As such, the court takes judicial notice of Judge Roeder's order.

[7]    The original Felony Complaint filed against plaintiff was amended to include the charges of perjury and presenting false evidence in an administrative hearing.  (PUF ¶ 54).

9

(Compl. ¶¶ 42-43).   Following the appellate court's decision, the Placer County District Attorney offered plaintiff a plea bargain agreement.   (Compl. ¶ 44).   On March 15, 2004, plaintiff entered a plea of no contest to two misdemeanors of destroying or concealing evidence.   (PUF ¶ 59).   Plaintiff served her sentence by completing community service, paying a fine and serving probation. (PUF ¶ 60).

**VI.   Other Court Orders Pertaining to Plaintiff's Horses**

After a contested hearing on March 21, 2002, during which plaintiff was represented by an attorney, Placer County Judge Cosgrove issued an order prohibiting plaintiff from having any contact with horses, including teaching or giving lessons.[8]   (PUF ¶ 55).   On August 19, 2002, after another hearing in which plaintiff was represented by counsel, Judge Cosgrove issued an order precluding plaintiff from owning a horse and from being involved in any feeding plans or the feeding or care of any other person's horses.[9]   (PUF ¶ 56).   On May 3, 2004, Judge Cosgrove ruled that the seizure of plaintiff's horses was done under Penal Code § 597.1 rather than Penal Code § 597, such that plaintiff was responsible for the costs of care of the horses while they were in the custody of the county.   (PUF ¶ 57).   On May 17, 2005, Commissioner Ross issued an order requiring return of the horses

---

[8]    Plaintiff objects to this statement asserting "the evidence as cited is not part of a request for judicial notice as stated by defendants."   As discussed above, the court may and does properly take judicial notice of Judge Cosgrove's order.

[9]    Plaintiff objects to this statement asserting "the evidence as cited is not part of a request for judicial notice as stated by defendants."   As discussed above, the court may and does properly take judicial notice of Judge Cosgrove's order.

1   to plaintiff upon payment of a specified monetary lien. (PUF ¶

2   58, 96).

3       **VII. <u>Plaintiff's Property in Custody of Animal Control</u>**

4       Defendants stored the documents and the filing cabinet

5   seized from plaintiff in a trailer at the animal shelter. (DUF ¶

6   79). Plaintiff claims that all employees and volunteers of the

7   animal shelter had access to her documents while they were stored

8   by defendants in the trailer. (DUF ¶ 87). The "Return on the

9   Warrant" indicates hay receipts were found and seized from

10  plaintiff. (DUF ¶ 109). However, there were no hay receipts

11  seized from plaintiff's property. (DUF ¶ 108).

12      The cats, German shepherd and chickens seized from plaintiff

13  were returned to her after an agreement was made between

14  plaintiff and Carter. (PUF ¶ 66).

15      Four of the horses seized by defendants died of natural

16  causes or were euthanized while in defendants' possession. (DUF

17  ¶ 124).

18      After the horses were seized from plaintiff, Carolyn Harris

19  ("Harris"), neighbor of animal control volunteer Odette Parker

20  ("Parker"), wrote to the Arabian Horse Association to inquire

21  about the breeding history of one of the seized horses,

22  Baybandee. (PUF ¶¶ 74-75). Harris learned Baybandee was

23  registered to Beverly Marx ("Marx") and was at one time

24  previously registered to Judi Spencer.[10] (PUF ¶ 75-76). Parker,

25  who fostered Baybandee after the horse was seized, also

26  communicated with Marx and asked her to give a declaration

27  ───────────────

28      [10]   The court assumes that Judi Spencer is plaintiff's
    maiden name.

stating she is the registered owner of Baybandee.  (PUF ¶ 79, DUF ¶ 150).  In addition, Garrett contacted Marx to request registration papers and proof of ownership for three of the seized horses, Nartane's Mandate, Baybandee and Atchafalaya.  (PUF ¶ 84, DUF ¶ 128).  Garrett informed Deputy District Attorney Scott Owens that plaintiff was not the registered owner of three of the seized horses and discussed the legal ownership of the horses with him as well.  (PUF ¶ 85, DUF ¶ 156).  Subsequently, Marx transferred Baybandee to Carolyn Harris ("Harris"), who has possessed the horse since October 7, 2002.  (PUF ¶ 88).  Marx transferred ownership of a second horse, Nartane's Mandate, to Amy Jo Hamilton ("Hamilton"), who had no affiliation with animal control.  (PUF ¶¶ 89, 91).

Plaintiff paid fees to the county in June or July of 2005 per Commissioner Ross's May 17, 2005 order and twenty-two of the seized horses were returned to her. (PUF ¶ 106).  Plaintiff claims defendants Placer County and Animal Control informed her in a letter that Baybandee would be returned to plaintiff upon payment of the lien. (DUF ¶ 137).  Defendant maintains it was Val Flood, an attorney at the Office of County Counsel, and not Placer County or Animal Control, who wrote the letter.  (DUF ¶ 137).  Baybandee and Nartane's Mandate were never returned to plaintiff.[11]  (PUF ¶¶ 96-98).[12]

---

[11]   It is not clear from the parties' motion papers whether Atchafalaya was ever returned to plaintiff.

[12]   It is not clear from either defendants' or plaintiff's motion papers what specific role, if any, defendants Ward and Banner played in the subject incidents.  In the complaint, Ward

(continued...)

1    **VIII.   <u>Plaintiff's Civil Lawsuits</u>**

2        Plaintiff filed her complaint in this action on January 13,

3    2005.  She filed an amended complaint on July 11, 2005 and a

4    second amended complaint on June 30, 2006.

5        On October 19, 2006, plaintiff filed a complaint in Placer

6    County Superior Court against Carolyn Harris, Amy Jo Hamilton and

7    David Meanor[13] seeking damages for conversion of Baybandee and

8    Nartane's Mandate.  (PUF ¶ 107).

9                              **STANDARD**

10       Summary judgment is appropriate when it is demonstrated that

11   there exists no genuine issue as to any material fact, and that

12   the moving party is entitled to judgment as a matter of law.

13   Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,

14   157, 90 S. Ct. 1598, 1608 (1970).

15       When parties submit cross-motions for summary judgment, the

16   court must review the evidence submitted in support of *each*

17   cross-motion and consider each party's motion on its own merits.

18   <u>Fair Housing Council of Riverside County, Inc. v. Riverside Two</u>,

19   249 F.3d 1132, 1136 (9th Cir. 2001).  The court must examine each

20   set of evidence in the light most favorable to the non-moving

21

22   _____

23       [12](...continued)
     is alleged to be a "supervisory employee" at Animal Control and
24   Banner is alleged to be a "management employee" of the county
     with decision-making authority for Animal Control.  (Compl., ¶s
25   10, 13.)  On their motion, defendants did not specifically move
     to dismiss these defendants for lack of involvement in the
26   relevant incidents, and as such, the court makes no specific
     findings herein as to these defendants' role, if any, in the
27   relevant conduct.

28       [13]   Amy Jo Hamilton gave Nartane's Mandate to David Meanor.
     (DUF ¶ 131).

                                   13

party.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-289 (1968). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence.  See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  The evidence presented by the parties must be admissible.  Fed. R. Civ. P. 56(e).  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  See Falls Riverway Realty, Inc. v. City of Niagara Falls, 754 F.2d 49, 57 (2d Cir. 1985); Thornhill Publ'g Co., Inc. v. GTE Corp.,

594 F.2d 730, 738 (9th Cir. 1979).

**ANALYSIS**

**I.   Statute of Limitations**

Defendants argue plaintiff's Section 1983 claims for violation of her Fourteenth Amendment procedural due process rights, relating to her failure to receive pre-seizure notice or a hearing before her horses were seized, and for violation of her Fourth Amendment rights to be free from unlawful search and seizure are barred by the applicable statute of limitations. (Defs.' MSJ, filed Feb. 23, 2007 [Docket #76] at 11; Defs.' Opp'n to Pl.'s MSJ, filed March 9, 2007 [Docket #99-1], at 4).

Section 1983 actions must be brought within the statute of limitations for personal injury tort actions in the forum state. Wilson v. Garcia, 471 U.S. 261, 276 (1985).  The current statute of limitations for personal injury claims in California is two years.  Cal. Civ. Proc. Code § 335.1 (Deering 2007).  Before January 1, 2003, the applicable statute of limitations was one year.  Cal. Civ. Proc. Code § 340(3) (West 1982), amended and redesignated by 2002 Cal. Stat. ch. 448 § 3.  The limitations period generally begins to run when the plaintiff knows, or should have known of the injury that is the basis of her cause of action.  Fink v. Shelder, 192 F.3d 911, 914 (9th Cir. 1999).

Several of plaintiff's claims are based on the same underlying event, the search and seizure of her property by Animal Control on November 6, 2000.  Plaintiff knew or should have known that she would not receive notice or a pre-seizure hearing no later than that date.  Accordingly, the court finds that plaintiff's procedural due process claim and her corollary

15

failure to train/supervise claim[14] accrued on the date of the
search and seizure, November 6, 2000.  Likewise, plaintiff's
Fourth Amendment unlawful search and seizure claim accrued on
that date as well.

In November of 2000, the applicable statute of limitations
was one year; therefore, plaintiff had until November 6, 2001 to
file the aforementioned claims.  However, plaintiff filed her
claims in federal court on January 13, 2005, well after the
statute of limitations expired.

Plaintiff argues nonetheless that her procedural due process
and unlawful search and seizure claims are not barred by the
statute of limitations because her ongoing criminal prosecution
gave "rise to additional issues regarding the process which was
due [her] at the time of the alleged wrongdoing by defendants."
(Pl.'s Opp'n to Defs.' MSJ, filed Mar. 9, 2007 [Docket #103], at
12; Pl.'s Reply, filed Mar. 16, 2007 [Docket #108], at 3).
However, plaintiff does not cite to any legal precedent, nor is
the court aware of any, which supports the conclusion that a
criminal trial tolls the statute of limitations for a Section
1983 claim.

---

[14]   Defendants have not clearly, separately moved for
summary judgment with regard to plaintiff's fourth claim for
relief for failure to train or supervise.  However, they have
generally sought summary judgment as to plaintiff's complaint
against them.  Because the failure to train or supervise claim is
factually connected to the procedural due process claim,
defendants' argument that plaintiff's procedural due process
claim is barred by the statute of limitations is equally
applicable to the failure to train or supervise claim, and
therefore, the court construes defendants' motion as moving for
judgment as to this claim on the basis of the statute of
limitations as well.

Accordingly, defendants' motion for summary judgment with respect to plaintiff's first claim for relief for violation of plaintiff's procedural due process rights, plaintiff's third claim for relief for unlawful search and seizure and her fourth claim for relief for failure to supervise or train is GRANTED.[15] Plaintiff's cross-motion for summary judgment on her unlawful search and seizure claim is DENIED.

**II.   <u>Substantive Due Process</u>**

Plaintiff's second and twelfth claims for relief are founded on alleged violations of her substantive due process rights.

The Fourteenth Amendment confers substantive due process rights.  See <u>Foucha v. Louisiana</u>, 504 U.S. 71, 80 (1992); <u>United States v. Salerno</u>, 481 U.S. 739, 746 (1987); <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986).

> However, the use of substantive due process to extend constitutional protection to economic and property rights has been largely discredited.  <u>See generally</u> Gerald Gunther, <u>Constitutional Law</u> at 432-65.  Rather, recent jurisprudence restricts the reach of the protections of substantive due process primarily to the liberties "deeply rooted in this Nation's history and

---

[15]   Defendants did not argue that plaintiff's Section 1983 procedural due process claim based on the transfer of ownership of two of her horses (her eleventh claim for relief) is barred by the statute of limitations.  However, the court notes that any such argument would have been unavailing.  Plaintiff alleges in her complaint that she became aware of the transfer in May 2004. (Compl. ¶ 50).  In 2004, the statute of limitations applicable to Section 1983 actions was two years.  Plaintiff filed a motion to amend her complaint and filed a draft amended complaint which included her procedural and substantive due process claims based on the transfer of the horses on March 14, 2006, and therefore, they were timely filed before the deadline of May 2006.  <u>See</u> <u>Schillinger v. Union Pac. R.R. Co.</u>, 425 F.3d 330, 334-35 (7th Cir. 2005) (holding that courts should look to the date the party filed the motion to amend rather than the date the amended pleading was filed to determine if the statute of limitations has run).

tradition." <u>Moore v. East Cleveland</u>, 431 U.S. 494, 503 (1977).

<u>Armendariz v. Penman</u>, 75 F.3d 1311, 1318-19 (9th Cir. 1996). Further, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular source of government behavior, 'that Amendment, not the more generalized notion of substantive due process' must be the guide for analyzing these claims." <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)).

### A. Plaintiff's Second Claim for Relief

Plaintiff's claim appears to arise out of the allegation that defendants seized her horses without due process and then maintained custody of them which deprived her of a "liberty" interest by preventing her from pursuing a career as a horse trainer.[16]  (Compl. ¶¶ 80-83).  The deprivation of property without a hearing is the type of government conduct for which the procedural due process clause of the Fourteenth Amendment provides explicit limitations.  <u>See Mathews v. Eldridge</u>, 424 U.S. 319, 332 (1976).  The United States Supreme Court has affirmatively held that where explicit text of a Constitutional provision addresses the type of conduct challenged by a plaintiff's claims, that provision, rather than the more general substantive due process protections guaranteed by the Fourteenth Amendment, must govern the plaintiff's claim.  <u>Albright</u>, 510 U.S.

---

[16]  Plaintiff has not fully explained how defendants deprived her of her chosen career as a horse trainer by seizing twenty-eight of her horses without due process.  The court assumes plaintiff is alleging she could not pursue a career as a horse trainer because she was not in physical possession of the horses she intended to train.

at 273; Graham, 490 U.S. at 395; see Armendariz, 75 F.3d at 1321.
As such, because the conduct plaintiff alleges is the type of
government action that the procedural due process clause of the
Fourteenth Amendment addresses, her substantive due process claim
is precluded.  Therefore, defendants' motion for summary judgment
regarding plaintiff's second claim for relief is GRANTED.

### B.  Plaintiff's Twelfth Cause of Action

    Similarly, in her twelfth claim for relief, plaintiff
alleges that the transfer of two of the horses seized by Animal
Control to private owners violated her substantive due process
rights.  (Compl. ¶¶ 176-77).  As discussed above, plaintiff
cannot bring this claim as a substantive due process claim
because the procedural due process clause of the Fourteenth
Amendment is the Constitutional provision which specifically
addresses the behavior plaintiff is challenging.  Albright, 520
U.S. at 273; Graham, 490 U.S. at 395; see Armendariz, 75 F.3d at
1321.  Accordingly, defendants' motion for summary judgment
regarding plaintiff's twelfth cause of action is GRANTED.
Plaintiff's cross-motion on this claim is accordingly DENIED.

### III.  Plaintiff's Section 1983 Claim based on the Transfer of Ownership of Two of Her Horses (Eleventh Claim for Relief)

    Plaintiff has not clearly plead her eleventh claim for
relief as either a claim based on lack of due process or a claim
based on a government taking under the Fifth Amendment.  On one
hand, in her eleventh cause of action, plaintiff alleges the
transfer of two horses, Baybandee and Nartane's Mandate, to new
owners by defendants violated her procedural due process rights.
(Compl. ¶ 163).  She further asserts that she was the owner of

these two horses at the time of the transfer, and that the
transfer of the horses occurred without notice or a hearing,
suggesting a due process claim.  (Compl. ¶¶ 165, 167).  However,
plaintiff also describes the transfer as a "taking by defendants
as a government entity and actors" and asserts that she was not
compensated for the reasonable value of the horses.[17]  (Compl. ¶
167-68).

Because of the confusion caused by the allegations in the
complaint as well as the way the parties have addressed this
claim in their papers, the court will address the claim as both a

_____

[17]   In their papers, defendants address this claim as if
it is a claim under the Fifth Amendment's Just Compensation
Clause.  Defendants move for summary judgment, arguing the claim
is not ripe for adjudication because plaintiff has not exhausted
the state's own procedure for obtaining compensation for her
transferred horses.  (Def's MSJ, at 15).  Defendants allege that
the California Constitution as well as the California Government
Tort Claims Act provide post-deprivation remedies for the
deprivation of property.  (Id.)  Defendants argue that because
plaintiff did not file suit in state court against any defendant
for compensation, she has not exhausted her state court remedies,
and therefore, her claim under Section 1983 must be dismissed.
(Id. at 15-16.)
    In plaintiff's opposition to defendants' motion for summary
judgment, she responds to defendants' argument that her claims
are not ripe for adjudication.  She argues that her claim is ripe
because she "filed a Government Tort Claim in compliance with
California Government Code sections 910, et seq. . . . ." (Pl.'s
Opp. to Defs.' MSJ, at 18).  Plaintiff does not argue in her
opposition that her eleventh claim for relief is based on a
violation of her due process rights rather than a "taking" under
the Just Compensation Clause of the Fifth Amendment.  However, in
her cross-motion for summary judgment, plaintiff alleges that she
is entitled to summary judgment on her eleventh cause of action
because defendants did not provide her with notice or a hearing
in conjunction with the transfer of her horses.  Plaintiff
erroneously contends that she was denied due process in violation
of the Due Process Clause of the *Fifth* Amendment.  The Due
Process Clause of the Fifth Amendment applies to actions taken by
the federal government.  The Due Process Clause of the Fourteenth
Amendment applies to state actors and is the clause relevant in
this case.

claim under the Fifth Amendment's Just Compensation Clause and a claim for violation of the Fourteenth Amendment's Procedural Due Process Clause.

### A.   Violation of Fifth Amendment's Just Compensation Clause

The Fifth Amendment of the United States Constitution states in relevant part, "Nor shall private property be taken for *public use*, without just compensation." U.S. Const. Amend V (emphasis added). The Fifth Amendment applies to the states through the Fourteenth Amendment. <u>See, e.q.</u>, <u>Williamson County Regional Planning Commission v. Hamilton Bank</u>, 473 U.S. 172, 175, n.1 (1985). If private property is taken but not taken for public use, the property owner does not have a claim for compensation under the Fifth Amendment but may have a claim under Section 1983 for deprivation of property without due process of law under the Fourteenth Amendment. <u>Hernandez v. Lafayette</u>, 643 F.2d 1188, 2000, n. 26 (5th Cir. 1981).

Plaintiff has not alleged nor has she provided any evidence that her horses were taken for public use. Indeed, she alleges defendants transferred her horses to other *private* owners thereby "taking" her interest in the horses. (Compl. ¶ 168). Because plaintiff has not alleged, let alone demonstrated, that her property was taken for public use, she does not have a viable Section 1983 claim based on the violation of her Fifth Amendment rights.[18]

---

[18]    Defendants support their proposition that plaintiff's eleventh claim for relief is not ripe for adjudication with cases holding that a plaintiff must establish that the government

(continued...)

**B.   Violation of Fourteenth Amendment's Procedural Due Process Clause**

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendments." Mathews v. Eldridge, 424 U.S. 319, 333 (1976).   The Due Process Clause of the Fifth Amendment applies to federal government actions.   See, e.g., Public Utilities Commission v. Pollak, 343 U.S. 451, 461 (1952).   The Fourteenth Amendment's Due Process Clause applies to the states. See, e.g., Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 172-73 (1972).   The United States Supreme Court has repeatedly held that "some form of hearing is required before an individual is finally deprived of a property interest." Mathews, 424 U.S. at 333.   The specific procedures which are required will vary in each case depending on the situation. Morrissey v. Brewer, 408 U.S. 471, 481 (1972).   In Mathews, the Court set forth three factors to be considered in determining whether or not a pre-deprivation hearing is required. Mathews, 424 U.S. at 335.   The three factors are: the private interest which will be affected by the action, the risk of erroneous deprivation, and the government's interest, including administration and financial burdens that the additional procedures would require. Id.

---

[18](...continued)
reached a final decision regarding the taking and that she was denied compensation by the government. (Def.'s MSJ, at 15). These cases are relevant to claims based on government takings of real property for public use under the Fifth Amendment, and as such, they are irrelevant here as plaintiff's claim is based on a purported taking of personal property which was not taken for public use.

As recognized by the court in <u>Hernandez</u>, under these facts, plaintiff can state a claim pursuant to Section 1983 based on violation of her Fourteenth Amendment procedural due process rights regarding the transfer of her horses.   <u>See e.g.</u>, <u>Hernandez</u>, 643 F.2d at 2000 n. 26.   Defendants did not move for summary judgment on this issue as they treated plaintiff's eleventh claim for relief as a claim under the Fifth Amendment's Just Compensation Clause.   As such, the court cannot grant summary judgment in their favor on this claim.[19]

For other reasons, the court also cannot grant summary judgment to plaintiff on this claim.[20]   While plaintiff proffers evidence of her property interest in the transferred horses and that she was neither given notice of the impending transfer nor afforded a hearing on the issue before or after the transfer took place, defendants proffer evidence, on the motions,[21] to dispute that plaintiff had an ownership interest in the subject horses.

---

[19]   The court notes that defendants did not otherwise demonstrate in their affirmative motion or in opposition to plaintiff's motion, that there was an opportunity for a hearing which plaintiff pursued or could have pursued either pre- or post-deprivation with respect to the transfer of her horses. While plaintiff apparently submitted a written claim to defendant Placer County, in accordance with California Government Code § 910, objecting to the taking of her horses and requesting compensation, and received a "Notice of Rejection of Claim" from the county in response, defendants did not argue that plaintiff's filing of said claim constituted a post-deprivation hearing satisfying the due process requirement.

[20]   Plaintiff specifically moved for summary judgment on this claim in her motion, although relying on an incorrect constitutional amendment.   <u>See</u> n. 17, <u>supra</u>.

[21]   Although defendants did not specifically address this claim in their motion, they otherwise provided evidence on other claims adjudicated herein which is also relevant to this claim.

1   (DUF ¶¶ 146-166).  That dispute presents triable issues of fact

2   precluding an award of summary judgment to plaintiff on this

3   claim.

4        In sum, plaintiff's eleventh claim for relief survives as a

5   procedural due process claim under the Fourteenth Amendment

6   pursuant to Section 1983.  No party is entitled to summary

7   judgment of that claim.

8                  **C.   Transfer of the Two Horses**

9        In their motion for summary judgment, defendants argue,

10  generally, that they cannot be held liable, in any respect, for

11  the transfer of the horses because none of them "transferred

12  registered ownership of any horses to a third party." (Defs.'

13  MSJ, at 14).  Defendants explain that, according to the Arabian

14  Horse Association, Marx was the registered owner of the two

15  horses.  (Defs.' MSJ, at 14; PUF ¶ 75).  Defendants allege that

16  *Marx* was contacted by private citizens about ownership of the

17  horses and it was Marx who transferred the registration papers to

18  these private citizens.  (Defs.' MSJ, at 14; PUF ¶¶ 76-77, 88,

19  91).  Defendants concede only that Garrett attempted to gain

20  documentation to confirm that Marx was the registered owner but

21  they assert the other defendants "played no role in this process

22  whatsoever . . . ."  (Defs.' MSJ, at 14; PUF ¶ 83).

23       Defendants' argument is unavailing.  At the time the horses

24  were transferred to private owners, they were in the custody of

25  Placer County Animal Control.  Although Marx may have been the

26  owner registered with the Arabian Horse Association, Placer

27  County Animal Control had the right of possession of the horses

28  at the time of the transfer pursuant to the search warrant.  The

                              24

fact that Marx filed paperwork with the Arabian Horse Association to change the registered ownership of the two horses does not absolve defendants of their involvement in the transfer. Moreover, defendants admit Garrett spoke with District Attorney Scott Owens about the legal issues regarding ownership of the horses. (DUF ¶ 156). The jury may consider the fact that Garrett sought out legal advice on this issue as evidence that defendants were aware of the possibility that transferring the horses to other persons might violate plaintiff's rights. Ultimately, the transfer could not have taken place without the involvement of Placer County and its employees because the county had custody and control over the horses before the transfer pursuant to the search warrant for plaintiff's property. (PUF ¶ 41). Therefore, defendants' argument that the only parties to the transfer are Marx and the two private parties is not persuasive, and defendants' role in depriving plaintiff of her personal property is a triable issue of fact.

### D.   Qualified Immunity

Defendants move for summary judgment on this claim as to the individual defendants, arguing they are entitled to qualified immunity with regard to their failure to prevent private parties from transferring the two horses.[22]   (Defs.' MSJ, at 19).

---

[22]   Defendants also argued that the individual defendants are entitled to qualified immunity with regard to their activities undertaken pursuant to the court issued warrant and for their failure to provide a pre-seizure hearing. (Defs.' MSJ, at 19). The court will not address these issues because summary judgment has been granted on those claims because the statute of limitations has run.

1    Public officials are entitled to qualified immunity for acts

2  that do not violate "clearly established . . . constitutional

3  rights of which a reasonable person would have known." Harlow v.

4  Fitzgerald, 457 U.S. 800, 818 (1982).  Thus, when considering a

5  defendant's motion for summary judgment on the ground of

6  qualified immunity, "[t]he threshold question . . . is whether,

7  taken in the light most favorable to the party asserting injury,

8  the facts alleged show that the officer's conduct violated a

9  constitutional right." Bingham v. City of Manhattan Beach, 329

10  F.3d 723, 729 (9th Cir. 2003), superceded by 341 F.3d 939 (citing

11  Saucier v. Katz, 533 U.S. 194, 201 (2001)).  If a violation can

12  be made out, the next step is to determine whether the right

13  violated or the law governing the official's conduct was clearly

14  established such that "it would be clear to a reasonable officer

15  that his conduct was unlawful in the situation he confronted."

16  Id. (quoting Saucier, 533 U.S. at 202); Act Up!/Portland v.

17  Bagley, 988 F.2d 868, 871 (9th Cir. 1993).  Where a defendant's

18  conduct violates constitutional rights and the law is clearly

19  established, the defendant may not claim qualified immunity.

20    Defendants argue that no clear legal precedent established

21  that the individual defendants owed a legal duty to "block the

22  transfer of registration papers and possession of animals between

23  private parties because someone else was disputing the ownership

24  or registration claims." (Defs.' MSJ, at 21).  However, Placer

25  County Animal Control seized the horses from plaintiff pursuant

26  to the warrant, and therefore, Animal Control had custody and

27  possession of the horses.  The appropriate inquiry is whether

28  there was clear legal precedent that Animal Control had a duty

26

1  not to deprive plaintiff of whatever ownership interest she had

2  in the horses at the time of the seizure without providing either

3  a pre- or post-deprivation hearing.

4      At the time, the law was clearly established that "some form

5  of hearing is required before an individual is finally deprived

6  of a property interest." <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333

7  (1976). Thus, given the established state of the law at the time

8  in question, the individual defendants had "fair warning" that

9  depriving plaintiff of her alleged property interest without

10  either a pre- or post-deprivation hearing was unconstitutional.

11      Accordingly, because there are triable issues of fact as to

12  whether the individual defendants violated plaintiff's right to

13  due process, and because the individual defendants had fair

14  notice that their alleged conduct was unconstitutional, the court

15  cannot find, on summary judgment, that they are entitled to

16  qualified immunity and defendants' motion is DENIED.  Likewise,

17  plaintiff's motion for summary judgment on this issue is also

18  DENIED.

19      **IV.  <u>Defendant Placer County Animal Control</u>**

20      Defendants argue that plaintiff's Section 1983 claims

21  against Placer County Animal Control should be dismissed because

22  Animal Control is one of several separate divisions of Placer

23  County Health and Human Services Department and is not "a person"

24  for purposes of bringing a claim under Section 1983.  (PUF ¶

25  108).  The court agrees.  A plaintiff may not bring a separate

26  Section 1983 claim against a municipal department.  <u>Vance v.</u>

27  <u>County of Santa Clara</u>, 928 F. Supp 993, 996 (N.D. Cal. 1996)

28  (holding that the term "persons" for Section 1983 purposes does

not encompass municipal departments; specifically county corrections department is not a "person" under Section 1983); Fields v. District of Columbia Department of Corrections, 789 F. Supp. 20, 22 (D. D.C. 1992) (holding that agencies and departments within the District of Columbia government are not "suable as separate entitites"); Stump v. Gates, 777 F. Supp. 808, 815 (D. Colo. 1991) (holding the police department and coroner's office are not "persons" against whom a Section 1983 action may be brought); Umhey v. County of Orange, 957 F. Supp. 525, 531-32 (S.D. N.Y. 1997) (holding that the Board of Ethics is not a separate entity which may be sued under Section 1983).  In her opposition to defendants' motion, plaintiff does not challenge said case law or its application to this case.  (Pl.'s Opp'n to Defs.' MSJ, at 23).  Accordingly, the court finds that Placer County Animal Control is a municipal department in Placer County, and therefore, plaintiff does not have a viable Section 1983 claim against Animal Control.  Defendants' motion with respect to this issue is GRANTED.

**V.   Defendant Placer County**

Defendants argue plaintiff does not have a viable cause of action against Placer County under Monell and its progeny. Monell v. Department of Social Servs., 436 U.S. 658 (1978) (finding a municipality may be liable under Section 1983 as a result of a governmental policy or custom).  The Ninth Circuit has recognized three ways that a municipality can be held liable under Section 1983:

> A section 1983 plaintiff may establish municipal liability in one of three ways.  First, the plaintiff may prove that a city employee committed the alleged constitutional violation

28

pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity.  Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy.  Whether a particular official has final policy-making authority is a question of state law.  Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.

Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (internal citations and quotations omitted).

Plaintiff fails to establish municipal liability for Placer County through any of the three modes described in Gillette. Even construed in the light most favorable to plaintiff, only the first theory is potentially applicable to plaintiff's allegations under Section 1983.  In her opposition to defendants' motion, plaintiff states a municipality is liable under Section 1983 when their "policy or custom" inflicts the injury.  (Pl.'s Opp'n to Defs.' MSJ, at 24).  Plaintiff, however, provides no evidence to support her allegation that Placer County had a policy or custom which inflicted injury upon her.  As such, defendants' motion with respect to this issue is GRANTED; plaintiff's Section 1983 claims against the County of Placer are dismissed.

### VI.   **Plaintiff's State Law Claims**

A district court has supplemental jurisdiction over state law claims arising from the same case or controversy as a federal claim providing original jurisdiction. 28 U.S.C. § 1367(a); City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997). As one of plaintiff's federal claims survives summary judgment, the court exercises supplemental jurisdiction over plaintiff's

state law claims.

## A.   Intentional Infliction of Emotional Distress

Defendants argue that plaintiff's claim for intentional infliction of emotional distress ("IIED") should be dismissed because defendants have not engaged in "outrageous" activity. (Defs.' MSJ, at 28).  To succeed on a claim of IIED, plaintiff must demonstrate:

> (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendants' outrageous conduct.

Christensen v. Superior Court, 54 Cal. 3d 868, 903 (1991). "Outrageous conduct" requires that the conduct must be so extreme "as to exceed all bounds of that usually tolerated in a civilized community." Id.  California courts have held that the question of whether the conduct alleged in the complaint is sufficiently "extreme and outrageous" is generally a factual issue for the jury. See Angie M. v. Superior Court, 37 Cal. App. 4th 1217, 1226 (1995).

In her complaint, plaintiff alleges defendants' conduct, including failing to provide care for plaintiff's horses after they were seized and transferring multiple horses to private individuals, was "undertaken intentionally or recklessly with the design to injure plaintiff emotionally." (Compl. ¶ 103). Plaintiff asserts defendants' conduct caused her "extreme and severe emotional distress . . . ." (Compl. ¶ 107).

1        **1.  Failure to care for horses after the seizure**

2        Defendants maintain that plaintiff's horses were underfed at

3   the time of the seizure and after plaintiff's horses were seized

4   by Animal Control, "they were cared for thereafter by [county]

5   personnel and volunteer foster care families, that the weight and

6   body scores of every horse improved after seizure from

7   [p]laintiff, that none were gelded, and yet four died as a result

8   of either independent accidents or systemic illness without fault

9   of any [d]efendant."  (Defs.' MSJ, at 28; PUF ¶¶ 31, 36, 41, 69-

10  72).  Defendants assert that no named defendant is responsible

11  for the death of any of plaintiff's horses, and therefore,

12  plaintiff does not have a viable claim for intentional infliction

13  of emotional distress based on this alleged conduct.  (Defs.'

14  MSJ, at 28).

15       Specifically, defendants proffer the declaration of Michael

16  McRae, D.V.M., a veterinarian with twenty-two years experience in

17  a general ambulatory equine practice, who explains the death of

18  each of the four underweight horses seized from plaintiff that

19  died while in defendants' custody.  Diablo, who was approximately

20  200 pounds underweight at the time of the seizure, was euthanized

21  by a veterinarian on May 4, 2001 after suffering a broken leg.

22  (PUF ¶ 69).  Marcie, who was underweight and not in good health

23  at the time of the seizure, was euthanized by a veterinarian on

24  June 22, 2003 after suffering neurological problems.  (PUF ¶ 70).

25  Flower was found dead on April 18, 2001.  (PUF ¶ 71).  Raiser was

26  euthanized by a veterinarian after suffering injuries as a result

27  of catching his left foot in a fence on January 1, 2003.  (PUF ¶

28  72).  With respect to all of the horses' deaths, McRae concluded

                                    31

that their deaths were not attributable to any deficiencies or negligence in the feeding, grooming or veterinary care of the horses after seizure.  (McRae Decl., filed Feb. 23, 2007 [Docket #78]).  As the moving party, based on said evidence,[23] defendants have met their burden of demonstrating the absence of a genuine issue of material fact on the issue of "outrageous conduct."

In response to defendants' motion, plaintiff simply *argues*, without citation to supporting evidence, that "the undisputed evidence establishes that defendants allowed, if not directly caused, the death of at least four (4) horses which they had seized from plaintiff . . . ."  (Pl.'s Opp. MSJ, at 27).  Plaintiff does not, however, proffer any evidence to support this argument.  As plaintiff has wholly failed to meet her burden to produce *evidence* to demonstrate a genuine issue for trial, defendants' motion as to this basis for plaintiff's IIED claim must be GRANTED.

### 2.   Transfer of horses to private owners

Defendants assert that the horses' registered owner, Marx, transferred ownership of the horses to private individuals and that no named defendant is responsible for the transfer of any

---

[23]   Plaintiff objects to this evidence on the grounds McRae's testimony is "uncorroborated and unsubstantiated." Plaintiff's objection is overruled.  McRae is an experienced veterinarian who provided testimony based on his extensive professional experience and upon "review [of] documents associated [with] the condition of [the] horses under [plaintiff's] control . . . prior to November 6, 2000, the quality of care provided by her prior to that date, the condition of the horses which were taken from her on that date, and issues related to rehabilitation efforts [by defendants] with regard to those horses, including four which subsequently died."  (McRae Decl., at 2).  McRae qualifies to provide expert testimony, and his testimony is properly considered as such.  Fed. R. Evid. 702.

1  horse.  (Defs.' MSJ, at 28; PUF 73-104).  As discussed

2  previously, defendants had custody of the horses after they were

3  seized from plaintiff, and therefore, the transfer of the horses

4  could not have occurred without some involvement by defendants.

5  As defendants' role in the transfer of the horses presents

6  triable issues of fact, their motion for summary judgment is

7  DENIED with respect to this claim as well.[24]

8  **B.  Negligent Infliction of Emotional Distress**

9       In California, there is no independent tort of negligent

10  infliction of emotional distress ("NIED").  Potter v. Firestone

11  Tire & Rubber Co., 6 Cal. 4th 965, 984-85 (1993).  Courts analyze

12  a claim for negligent infliction of emotional distress as a claim

13  for the tort of negligence.  Id. at 984.  A plaintiff must set

14  forth each of the elements of negligence: 1) duty, 2) breach of

15  duty, 3) causation, and 4) damages.  Huggins v. Longs Drug Stores

16  California, Inc., 6 Cal. 4th 124, 129 (1993); Burgess v. Superior

17  Court, 2 Cal. 4th 1064, 1072 (1992).  "Whether a defendant owes a

18  duty of care is a question of law.  Its existence depends upon

19  the foreseeability of the risk and upon a weighing of policy

20  considerations for and against imposition of liability."  Marlene

21  F. v. Affiliated Psychiatric Medical Clinic, 48 Cal. 3d 583, 588

22  (1989) (quoting Slaughter v. Legal Process & Courier Service, 162

23  Cal. App. 3d 1236, 1249 (1984)).

24

25  _____

26      [24]   The court notes that defendants did not move for
    summary judgment as to this claim on any other basis.  As such,
    the court does not consider the sufficiency of the evidence with
27  regard to plaintiff's claimed "severe emotional distress" or
    whether defendants' conduct with respect to the transfer of the
28  horses *caused* plaintiff's distress.

1   Defendants did not separately address plaintiff's NIED claim
2   in their motion for summary judgment but combined their
3   discussion of this cause of action with their discussion of
4   plaintiff's IIED claim.  As such, the same arguments defendants
5   made with respect to plaintiff's IIED claim apply to this claim
6   as well.[25]  Thus, for the same reasons set forth above,
7   plaintiff's NIED claim survives with respect to the transfer of
8   her horses to other persons.  Accordingly, defendants' motion for
9   summary judgment with respect to this claim is DENIED as to that
10  basis for plaintiff's claim.

11          **C. Conversion**

12          Defendants move for summary judgment with respect to
13  plaintiff's conversion claim, arguing four of plaintiff's horses
14  died without fault on the part of defendants and two were
15  transferred to private owners by someone other than defendants.
16  (Defs. MSJ, at 25).

17          The tort of conversion is "any act of dominion wrongfully
18  exerted over another's personal property in denial of or
19  inconsistent with his rights therein."  Iguaye v. Howard, 114
20  Cal. App. 2d 122, 126 (1952).  The elements of a cause of action
21  for conversion of personal property are: "1) plaintiff['s]
22  ownership or right to possession of the property at the time of
23  the conversion; 2) defendants' conversion by a wrongful act or
24  disposition of plaintiff['s] property rights; and 3) damages."
25  Baldwin v. Marina City Properties, Inc., 79 Cal. App. 3d 292, 410
26  (1978).  Legal title to the property is not a requirement to

27

28          [25]  Defendants did not argue that they owed no duty to
    defendant.  Accordingly, the court does not consider this issue.

bring a viable claim for conversion.  <u>Messerall v. Fulwider</u>, 199 Cal. App. 3d 1324, 1329 (1988).  A plaintiff must show only that she was entitled to immediate possession of the item at the time of the conversion.  <u>Id.</u>

For the reasons set forth above, defendants have proffered evidence to show they did not commit a wrongful act which caused the death of plaintiff's four horses.  Plaintiff has not offered any evidence in rebuttal.  Accordingly, she cannot maintain a cause of action for conversion based on the four horses that died while in defendants' custody.  Defendants' motion as to this basis for plaintiff's conversion claim must therefore be GRANTED; plaintiff's cross-motion on the issue is accordingly DENIED.

However, as to the transfer of plaintiff's two horses to other persons, for the reasons set forth above, triable issues of fact remain as to whether defendants acted wrongfully in facilitating and/or allowing the transfer to take place.  Therefore, the court cannot grant summary judgment to either party with respect to this basis for plaintiff's conversion claim; both parties' motions for summary judgment are DENIED.

### D.  Defamation

Defendants argue summary judgment should be granted with respect to plaintiff's defamation claim because plaintiff admitted in her deposition that none of the named defendants made a defamatory statement about her.  (Defs.' MSJ, at 26; PUF ¶ 118; Jackson Dep., at 425:11-426:21).  The tort of defamation involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage.  <u>Gilbert v. Sykes</u>, 147 Cal. App. 4th

1  13, 27 (2007).  "'There can be no recovery for defamation without

2  a falsehood.'"  Id. (citation omitted).

3      In her opposition to defendants' motion for summary

4  judgment, plaintiff does not persuasively dispute her deposition

5  testimony,[26] and she otherwise fails to identify a specific

6  defamatory statement made by one of the defendants.  As plaintiff

7  has offered no evidence supporting her allegation that defendants

8  made defamatory statements against her, defendants' motion for

9  summary judgment on this claim is GRANTED.  Plaintiff's cross-

10 motion for summary judgment on this claim is accordingly DENIED.

11          **E.  Misrepresentation**

12     Plaintiff alleges defendants represented to her that her

13 horses would be returned upon payment of a lien as to each horse

14 as set forth in the order signed by Placer County Court

15 Commissioner Ross on May 17, 2005.  (Compl. ¶¶ 145-146, 151).

16 Plaintiff claims she paid the specified fee for two of her

17 horses, Nartane's Mandate and Baybandee, and those horses were

18 not returned to her.  (Compl. ¶ 153).  Further, plaintiff

19 contends defendants knew two of her horses would not be returned

20

21     [26]     In her opposition, plaintiff tries to dispute that she
   admitted in her deposition that neither Garrett, Stout, Ward,
22 Carter or Gentile made comments detrimental to her reputation.
   (PUF ¶ 118).  She argues when she said in her deposition that
23 none of the defendants made comments detrimental to her
   reputation, she was referring only to comments made by defendants
24 *after* her conviction.  (PUF ¶ 118).  Plaintiff's argument is
   unavailing.  In plaintiff's complaint, she alleges defendants
25 made defamatory statements in October 2004 and within twelve
   months prior to June 2005.  (Compl. ¶¶ 129, 131).  Plaintiff was
26 convicted in November 2001, and therefore, plaintiff has not
   alleged defendants made defamatory statements about her *before*
27 her conviction.  (PUF ¶ 54).  In fact, plaintiff admits in her
   opposition to the motion for summary judgment that the criminal
28 proceedings against plaintiff had concluded when defendants made
   the alleged defamatory statements.  (Pl.'s Opp'n to Defs.' MSJ,
   at 26).

                                36

1  to her and therefore they intentionally made the

2  misrepresentation.  (Compl. ¶ 153).

3      Defendants move for summary judgment on this claim, arguing

4  plaintiff does not have a viable cause of action because she

5  cannot prove one of the elements of a claim for

6  misrepresentation--justifiable reliance on the misrepresentation.

7  (Defs.' MSJ, at 29).  The elements of a cause of action for

8  misrepresentation or fraud under California law are: "1) a

9  misrepresentation (false representation, concealment, or

10 nondisclosure); 2) knowledge of falsity (or scienter); 3) intent

11 to defraud, i.e., to induce reliance; 4) justifiable reliance;

12 and 5) resulting damage." Robinson Helicopter Co., Inc. v. Dana

13 Corp., 34 Cal. 4th 979, 990 (2004).

14     Defendants argue plaintiff concedes she was informed in May

15 2004 that four of her seized horses had died and two of them had

16 been transferred to other owners.  (Defs.' MSJ, at 29; Compl.

17 ¶¶ 49-50).  Commissioner Ross' order was issued in May 2005.

18 (PUF ¶ 58).  Thus, defendants contend plaintiff clearly knew

19 *before* she paid the liens that two of her horses had been

20 transferred to other persons.

21     The court agrees.  Indeed, plaintiff does not address this

22 argument in her opposition to defendants' motion for summary

23 judgment.  She has provided no evidence to support the essential

24 element of justifiable reliance on defendants' representation

25 (even assuming the representation was made).  Accordingly,

26 defendants' motion for summary judgment is GRANTED on this claim.

27 Plaintiff's cross-motion for summary judgment on this claim is

28 thus DENIED.

**CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is GRANTED in part and DENIED in part.  Plaintiff's cross-motion for partial summary judgment is DENIED.  In sum, the following of plaintiff's claims survive: (1) violation of plaintiff's Fourteenth Amendment procedural due process rights pursuant to Section 1983 based on the transfer of ownership of two of plaintiff's horses (against the individual defendants); (2) IIED based on the transfer of ownership of two of plaintiff's horses (against all defendants); (3) NIED based on the transfer of ownership of two of plaintiff's horses (against all defendants); and (4) conversion based on the transfer of ownership of two of plaintiff's horses (against all defendants).

IT IS SO ORDERED.

DATED: May 15, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE